UNITED STATES DISTRICT COURT

CENTRAL DISTRICT OF CALIFORNIA

| | |
|---|---|
| KEITH HAWES,<br><br>              Plaintiff,<br><br>       v.<br><br>PACIFIC GAS AND ELECTRIC COMPANY, ET AL.,<br><br>              Defendant(s). | Case No. EDCV 16-1623-DMG (KK)<br><br><br>REPORT AND RECOMMENDATION OF UNITED STATES MAGISTRATE JUDGE |

This Report and Recommendation is submitted to the Honorable Dolly M. Gee, United States District Judge, pursuant to 28 U.S.C. § 636 and General Order 05-07 of the United States District Court for the Central District of California.

## I.

## **SUMMARY OF RECOMMENDATION**

Plaintiff Keith Hawes ("Plaintiff") filed a First Amended Complaint ("FAC") pursuant to 42 U.S.C. § 1983 alleging Defendant Pacific Gas and Electric Company ("Defendant") violated Plaintiff's Fourteenth Amendment due process rights by "poisoning" the aquifer beneath his property with arsenic and uranium. Defendant has filed a Motion for Summary Judgment. For the reasons set forth below, this Court recommends (1) GRANTING Defendant's Motion for Summary Judgment; and (2) DISMISSING the action with prejudice.

## II.
## BACKGROUND

**A.  PLEADINGS**

On July 26, 2016, Plaintiff[1] filed a civil rights complaint ("Complaint") in this Court alleging Defendant violated Plaintiff's civil rights under 42 U.S.C. §§ 1983 and 1985(3).  See ECF Docket No. ("Dkt.") 1, Compl.

On August 16, 2016, Defendant filed a Motion to Dismiss the Complaint. Dkt. 13.  On November 8, 2016, Plaintiff filed a Motion for Leave to file a First Amended Complaint.  Dkt. 41.  On February 13, 2017, the Court granted Plaintiff's Motion to File a First Amended Complaint and denied Defendant's Motion to Dismiss the Complaint as moot.[2]  Dkt. 65.

On February 13, 2017, Plaintiff filed the operative FAC pursuant to 42 U.S.C. § 1983 ("Section 1983") alleging Defendant violated Plaintiff's Fourteenth Amendment due process rights.  Dkt. 66.  In the FAC, Plaintiff seeks relief pursuant to Section 1983 alleging Defendant's "Agricultural Operations," (i.e., "failed remedial operations") caused Plaintiff's ground drinking water to be poisoned with the by-products arsenic and uranium.  Id. at 6.  Plaintiff alleges Defendant's irrigation of its alfalfa fields using the "ground drinking water" caused arsenic and uranium to "seep[] back down to the aquifer, and did poison[] the rest of the drinking water in such aquifer."  Id. at 10.  While Plaintiff alleges the various regulatory agencies do not regulate private wells, he attaches a letter from the

---

[1] Before initiating the action in this Court, on September 24, 2014, Plaintiff filed a Complaint in San Bernardino Superior Court, Case No. CIVDS 14-14381, alleging Defendant poisoned the aquifer below his property with arsenic and uranium. Dkt. 139-3, Declaration of James Mink ("Mink Decl."), ¶ 6, Ex. D at 7.  Plaintiff alleged he withdrew as a Class Member in a Class Action in San Bernardino County Superior Court, Case No. CIVDS 13-08429 because he suffered "severe health injuries" in addition to damages to his real estate from the alleged poisoning. Id., Ex. D at 2.

[2] The Court noted Plaintiff carefully omitted any mention of poisoning the aquifer by "injection" and therefore found the FAC was not preempted by the Safe Water Drinking Act ("SDWA").  Dkt. 65 at 6-8.

Executive Officer of the State of California Lahontan Regional Water Quality Control Board ("State Board") stating the State Board has continuing authority to require Defendant to clean up the discharges from the compressor station site and expressing hope that the "citizens of Hinkley can dispel health concerns about their community" because the "levels of chrom-6 in current residential wells are much lower (better) than the state's drinking water standard." FAC Mem., Ex. E. Plaintiff alleges Defendant is acting under color of state law under a joint action theory because the State Board "is protecting the Defendant from prosecution, by avoiding to order the Defendant to clean and abate their byproducts Arsenic and Uranium from ground drinking water . . . because Defendant has paid said State of California Board millions of dollar[s], money talks and everyone else walks." FAC Mem. at 13.

On February 27, 2017, Defendant filed an Answer to the FAC. Dkt. 67.

On March 1, 2017, the Court issued a Scheduling Order setting a discovery cut-off of October 2, 2017 and a substantive motion cut-off of November 1, 2017. Dkt. 68. On May 18, 2017, the Court granted Defendant's request to modify the Scheduling Order and continued the discovery cut-off to December 4, 2017 and the substantive motion cut-off to January 4, 2017. Dkt. 78. In addition, the Court ordered the parties to exchange initial expert disclosures pursuant to Federal Rule of Civil Procedure 26(a)(2) on October 2, 2017 and rebuttal expert disclosures on October 30, 2017. Id.

**B.    MOTION FOR SUMMARY JUDGMENT**

On January 4, 2018, Defendant filed the instant Motion for Summary Judgment. Dkt. 139. Defendant filed the following in support thereof:

- Memorandum of Points and Authorities, Dkt. 139-1;
- Statement of Uncontroverted Facts and Conclusions, Dkt. 139-2;
- Declaration of James Mink ("Mink Decl."), Dkt. 139-3, with the following exhibits attached thereto, Dkt. 139-4:

3

- o Exhibit A – FAC
- o Exhibit B – Excerpts from the Deposition of Anne Holden, the Federal Rule of Civil Procedure 30(b)(6) designee for the Lahontan Regional Water Quality Control Board ("Holden Depo")
- o Exhibit C – 2012 Fact Sheet exhibit to Holden Depo
- o Exhibit D – Plaintiff's 2014 complaint against Defendant filed in San Bernardino County Superior Court
- o Exhibit E – Complaint
- o Exhibit F – July 18, 2014 Letter exhibit to Holden Depo
- o Exhibit G – Plaintiff's initial disclosures served May 22, 2017
- o Exhibit H– Plaintiff's expert disclosures served October 2, 2017
- o Exhibit I – Plaintiff's September 23, 2017 declaration filed in this action
- Proposed Judgment, Dkt. 139-5.

On January 5, 2018, the Court issued an Order notifying Plaintiff of the requirements for opposing a motion for summary judgment, pursuant to Rand v. Rowland, 154 F.3d 952 (9th Cir. 1998) (en banc). Dkt. 141.

On January 17, 2018, Plaintiff filed an Opposition to Defendant's Motion for Summary Judgment. Dkts. 145, 146. Plaintiff filed the following in support thereof:

- Plaintiff's Affidavit, Dkt. 150;
- Plaintiff's Declaration, Dkt. 151;
- Objection to Defendant's Proposed Judgment, Dkt. 149;
- Statement of Genuine Disputes, Dkt. 152;
- Opposition to Defendant's Statement of Uncontroverted Facts and Conclusions, Dkt. 148;
- Opposition to Defendant's Declaration, Dkt. 147;
- Exhibits – Volume 1, Dkt. 153, consisting of the following Exhibits:

- o Exhibit 1-A – Dkt. 65, Order Granting Plaintiff's Motion for Leave to File First Amended Complaint;
- o Exhibit 1-B – Order Denying Defendant's Request for Joint Discovery and Scheduling Conference in Related Cases;
- o Exhibit 1-C – Order Denying Defendant's Request for Joint Discovery and Scheduling Conference in Related Cases;
- o Exhibit 1-D – letter dated December 22, 2016 from Defendant to Anne Holden and Lauri Kemper;
- o Exhibit 1-E – an affidavit signed by Nick Panchev, a plaintiff in a related case, "medical records," and "scientific reports by experts";
- o Exhibit 1-F - email correspondence between Defendant's counsel and Kimberly Blowney, a plaintiff in a related case;
- Exhibits – Volume 2, Dkt. 154, consisting of the following Exhibits;
  - o Exhibit 2-A – letter dated July 18, 2014 from the State Board to several unknown persons, Daron Banks, Roberta Chavira-Walker, and Carmela Spasojevich;
  - o Exhibit 2-B – excerpts of a letter dated October 7, 2011 from Clearwater Group to Lauri Kemper;
  - o Exhibit 2-C – letter dated September 15, 2016 from John Izbicki, the Research Hydrologist for the U.S. Geological Survey, to The Hinkley Independent Review Panel Manager;
  - o Exhibit 2-D – excerpts of a memorandum from ARCADIS to Lauri Kemper, Anne Holden, and Iain Baker;
  - o Exhibit 2-E – excerpts of reports from Weck Laboratories, Inc. to Nick Panchev, a plaintiff in a related case;
  - o Exhibit 2-F – pictures, though it is unclear what they are intended to depict, and a statement prepared by an unknown person purporting to explain how the USGS takes groundwater samples;

1          o Exhibit 2-G – excerpts from a project proposal and excerpts from
2             internet articles;
3      • Exhibits – Volume 3, Dkt. 155, consisting of the following Exhibits:
4          o Exhibit 3-A – a police report naming Plaintiff and Darlene Herring, a
5             plaintiff in a related case, as victims, and a "demand for further
6             investigation" by Andrea Williams, a plaintiff in a related case, to the
7             Captain of the San Bernardino County Sheriff's Department;
8          o Exhibit 3-B – excerpt of the California Penal Code, which appears to
9             have been printed from the California Legislative Information website;
10         o Exhibit 3-C – subpoenas to testify at deposition in the related case,
11            <u>Blowney v. Pacific Gas and Electric Company</u>, EDCV 16-677-DMG
12            (KK);
13         o Exhibit 3-D – Declaration of Kimberly Blowney;
14         o Exhibit 3-E – pictures with captions;
15         o Exhibit 3-F – several pages of "Facts."
16     On January 25, 2018, Defendant filed a Reply in support of the Motion for
17 Summary Judgment and Objections to Plaintiff's Evidence. Dkt. 158.
18     The matter thus stand submitted.[3]

19                                  **III.**
20                  **MOTION FOR SUMMARY JUDGMENT**
21 **A.   LEGAL STANDARD**
22     Summary judgment should be granted "if the movant shows that there is no
23 genuine dispute as to any material fact and the movant is entitled to judgment as a
24 matter of law." Fed. R. Civ. P. 56(a); <u>accord</u> <u>Wash. Mut. Inc. v. United States</u>, 636
25

---

26 [3] In addition, Defendant's Motion to Compel Plaintiff to Provide Further
27 Discovery Responses and for Sanctions for Discovery Obstruction, Dkt. 107, Defendant's Motion for Deposition Sanctions, Dkt. 129, and Plaintiff's Motion to
28 Compel Defendant to Alternative Dispute Resolution and Settlement, Dkt. 119, are DENIED as MOOT.

F.3d 1207, 1216 (9th Cir. 2011). Material facts are those that may affect the outcome of the case. Nat'l Ass'n of Optometrists & Opticians v. Harris, 682 F.3d 1144, 1147 (9th Cir. 2012) (citing Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 248, 106 S. Ct. 2505, 91 L. Ed. 2d 202 (1986)). A dispute is genuine "if the evidence is such that a reasonable jury could return a verdict for the nonmoving party." Anderson, 477 U.S. at 248.

The moving party bears the initial burden of establishing the absence of a genuine issue of material fact. Celotex Corp. v. Catrett, 477 U.S. 317, 323, 106 S. Ct. 2548, 91 L. Ed. 2d 265 (1986). If "the nonmoving party has the burden of proof at trial, the moving party need only point out 'that there is an absence of evidence to support the nonmoving party's case.'" Devereaux v. Abbey, 263 F.3d 1070, 1076 (9th Cir. 2001) (quoting Celotex, 477 U.S. at 325). Once the moving party has met its initial burden, Rule 56(c) requires the nonmoving party to "go beyond the pleadings and by her own affidavits, or by the 'depositions, answers to interrogatories, and admissions on file,' designate 'specific facts showing that there is a genuine issue for trial.'" Celotex, 477 U.S. at 324 (quoting Fed. R. Civ. P. 56(c), (e)); see also Norse v. City of Santa Cruz, 629 F.3d 966, 973 (9th Cir. 2010) (en banc) ("Rule 56 requires the parties to set out facts they will be able to prove at trial."). "In judging evidence at the summary judgment stage, the court does not make credibility determinations or weigh conflicting evidence." Soremekun v. Thrifty Payless, Inc., 509 F.3d 978, 984 (9th Cir. 2007). "Rather, it draws all inferences in the light most favorable to the nonmoving party." Id.

An affidavit or declaration may be used to support or oppose a motion for summary judgment, provided it is "made on personal knowledge, set[s] out facts that would be admissible in evidence, and show[s] that the affiant or declarant is competent to testify on the matters stated." Fed. R. Civ. P. 56(c)(4). In addition, pursuant to Central District Local Rule 56-3, the Court assumes the material facts

as claimed and adequately supported by the moving party are admitted to exist without controversy.[4]

"At the summary judgment stage, a party no longer can rely on allegations alone, however plausible they may be." Lopez v. Pac. Mar. Ass'n, 657 F.3d 762, 768 (9th Cir. 2011) (citation omitted); see also Estate of Tucker ex rel. Tucker v. Interscope Records, 515 F.3d 1019, 1033 (9th Cir. 2008) ("To defeat a summary judgment motion, . . . the non-moving party may not rest upon the mere allegations or denials in the pleadings.") (citation and internal quotation marks omitted); Nelson v. Pima Community Coll., 83 F.3d 1075, 1081-82 (9th Cir. 1996) ("[M]ere allegation and speculation do not create a factual dispute for purposes of summary judgment.") (citation omitted). Rather, a "party opposing summary judgment must present some significant probative evidence tending to support the complaint." Bias v. Moynihan, 508 F.3d 1212, 1222 (9th Cir. 2007) (citation and internal quotation marks omitted). If a plaintiff fails "to present any evidence to support" a claim, summary judgment in favor of the defendant is appropriate. Id.

**B.     DEFENDANT'S EVIDENTIARY OBJECTIONS[5]**

    **1.     Objections to Relevance and Admissibility of Form**

"[S]tatements in declarations based on speculation or improper legal conclusions, or argumentative statements, are not facts and likewise will not be considered on a motion for summary judgment. Objections on any of these grounds are simply superfluous in this context." Burch v. Regents of Univ. of California, 433 F. Supp. 2d 1110, 1119 (E.D. Cal. 2006). In addition, objections

---

[4] Central District Local Rule 56-3 provides:
> In determining any motion for summary judgment or partial summary judgment, the Court may assume that the material facts as claimed and adequately supported by the moving party are admitted to exist without controversy except to the extent that such material facts are (a) included in the "Statement of Genuine Disputes" and (b) controverted by declaration or other written evidence filed in opposition to the motion.

[5] Plaintiff did not file any evidentiary objections.

1  based on relevance or the inadmissibility of the form of evidence are generally
2  improper on summary judgment.  Bosworth v. United States, No. CV 14-0283
3  DMG (SS), 2016 WL 5662045, at *7 (C.D. Cal. July 22, 2016), report and
4  recommendation adopted, No. CV 14-0283 DMG (SS), 2016 WL 5661864 (C.D.
5  Cal. Sept. 29, 2016).  At the summary judgment stage, courts should not focus on
6  the admissibility of the form of evidence that the parties submit, but on the
7  admissibility of the contents of the evidence.  Fraser v. Goodale, 342 F.3d 1032,
8  1036 (9th Cir. 2003); see also Block v. City of Los Angeles, 253 F.3d 410, 419 (9th
9  Cir. 2001).  "Rule 56 is precisely worded to exclude evidence only if it's clear that
10  it cannot be presented in an admissible form at trial."  Comite de Jornaleros de
11  Redondo Beach v. City of Redondo Beach, 657 F.3d 936, 964 n.7 (9th Cir. 2011);
12  Bohnert v. Roman Catholic Archbishop of San Francisco, 136 F. Supp. 3d 1094,
13  1111 (N.D. Cal. 2015) (declining to consider on summary judgment objections that
14  evidence "lacks foundation, is irrelevant, is inadmissible hearsay, or is responsive
15  to leading questions").

16  　　　　Defendant objects to Exhibit 1-F and the police report in Exhibit 3-A on the
17  grounds they are hearsay.  Dkt. 158-1.  Defendant objects to Exhibit 1-D, the
18  medical records and "scientific reports by experts" in Exhibit 1-E, Exhibit 2-C,
19  Exhibit 2-F, and the "demand for further investigation" in Exhibit 3-A on the
20  grounds they are unauthenticated and hearsay.  Id.  Defendant objects to Exhibit 2-
21  B, Exhibit 2-D, Exhibit 2-E, Exhibit 2-G, and Exhibit 3-D on the grounds they are
22  unauthenticated, hearsay, and incomplete.  Id.  Defendant objects to Exhibit 2-A on
23  the grounds it is unauthenticated, hearsay, and irrelevant.  Id.

24  　　　　Defendant's objections on the grounds of relevance and admissibility of the
25  form of Plaintiff's evidence are superfluous and not necessary at this stage because
26  the Court's focus is on the admissibility of the contents of the evidence, rather than
27  the form.  See Fraser, 342 F.3d at 1036.  Hence, Defendant's objections on these
28  grounds are overruled as moot.

### 2. Improper Lay Witness Testimony

Federal Rule of Evidence 701 only allows a lay witness to give opinion testimony if it is "(a) rationally based on the perception of the witness, (b) helpful to a clear understanding of [the witness's] testimony or the determination of a fact in issue, and (c) not based on scientific, technical, or other specialized knowledge within the scope of Rule 702." Fed. R. Evid. 701.

#### a. Exhibit 1-E Panchev Affidavit

Defendant objects to the affidavit in Exhibit 1-E on the grounds the "affiant lacks personal knowledge regarding the identity of the doctor(s) in question" and the affidavit contains inadmissible lay opinions. Dkt. 158-1. The affidavit is signed by Nick Panchev, a plaintiff in one of the related cases. Dkt. 153 at 25. Mr. Panchev states Gerald Radauver, M.D. and Dr. Keith Gross, M.D. are Plaintiff's doctors "who [are] in charge of reviewing: hair, nail, urine and blood tests, associated therewith the named patient'[s] body exposure to ARSENIC and/or URANIUM, as a direct result thereof utilized ground drinking water for any and/or all intensive purposes, during the period December 4, 2014 and December 4, 2017, and/or within one year between said dates." Id.

To the extent Mr. Panchev is opining Plaintiff's exposure to arsenic or uranium resulted from using ground drinking water, it is not clear his testimony is based on his own perception or personal knowledge. In addition, such testimony is based on scientific, technical, and specialized knowledge and this Court has no evidence showing Mr. Panchev is an expert qualified to render such an opinion. Therefore, to the extent his statement can be construed as an attempt to establish Plaintiff's exposure to arsenic or uranium, Mr. Panchev's testimony is an inadmissible lay opinion and Defendant's objection is sustained.

#### b. Exhibit 3-D Blowney Declaration

Defendant objects to the declaration of Kimberly Blowney in Exhibit 3-D on the grounds the declarant lacks personal knowledge, hearsay, and that the

declaration contains inadmissible lay opinions. Dkt. 158-1. Ms. Blowney concludes that because she knows the plaintiffs in the related actions and that scientific evidence shows the aquifer beneath each plaintiff's property is "poisoned with either Arsenic or Uranium, . . . all Plaintiffs are also poisoned with either Arsenic or Uranium." Dkt. 155 at 44-46.

To the extent Ms. Blowney is opining on Plaintiff's exposure to arsenic and uranium, it is not clear her testimony is based on her own perception or personal knowledge. In addition, such testimony is based on scientific, technical, and specialized knowledge and this Court has no evidence showing Ms. Blowney is an expert qualified to render such an opinion. Therefore, to the extent her statement can be construed as an attempt to establish Plaintiff's exposure to arsenic or uranium or that she was "poisoned," his testimony is an inadmissible lay opinion and Defendant's objection is sustained.

### c. Exhibit 3-E Picture Captions

Defendant objects to the pages of pictures in Exhibit 3-E on the grounds they are unauthenticated, hearsay, contain "inadmissible lay opinions on medical diagnosis and causation," and lack foundation. Dkt. 158-1. Exhibit 3-E purports to contain pictures of various plaintiffs from this and the related actions with descriptions such as "skin cancer," "poisoned with uranium," and "poisoned w/ arsenic." Dkt. 155 at 48-51.

First, it is unclear who prepared the captions, though it appears they were prepared by Plaintiff. To the extent the captions purport to establish the cause of Plaintiff's injuries, they are inadmissible lay opinion and Defendant's objection is sustained. See Fed. R. Evid. 701.

### d. Exhibit 3-F "Facts"

Defendant objects to the seven-page document entitled "facts" in Exhibit 3-F on the grounds it is unauthenticated, hearsay, and contains inadmissible lay opinions. Dkt. 158-1. Exhibit 3-F consist of five pages of "facts" about subjects

such as "Arsenic in Ground Water," "Uranium in Ground Water," "Sampling of Ground Water in Aquifer," "Movement of Ground Water," "Agricultural Treatment Operations and In-Situ Operations," and "the 'Worthless Report' by John Izbiki." Dkt. 155 at 53-59.

First, it is unclear who prepared the "facts," though they appear to have been prepared by Plaintiff based on writing style and font anomalies. To the extent they purport to establish that the water in the Hinkley aquifer contained arsenic or uranium and how it got there, the effects of arsenic and uranium, and whether the water sampling was properly performed, they are inadmissible lay opinion and Defendant's objection is sustained. See Fed. R. Evid. 701.

### e. Plaintiff's Declaration and Affidavit

Defendant objects to Plaintiff's declaration and affidavit on the grounds they are inadmissible lay opinion to the extent they seek to establish medical causation. Dkt. 158-1. Plaintiff is not a qualified expert in the medical field. Therefore, while his own statements may be used to establish his symptoms, to the extent they purport to establish the cause of Plaintiff's injuries, they are inadmissible lay opinion and Defendant's objection is sustained. See Fed. R. Evid. 701.

## C. DISCUSSION

Defendant argues Plaintiff cannot establish a material element of his claims - causation - because he has not designated any scientific or medical expert witnesses and cannot create a triable issue of material fact through his own declarations. Dkt. 139-1 at 12-15.

### 1. Applicable Law

"Causation is, of course, a required element of a § 1983 claim." Estate of Brooks ex rel. Brooks v. United States, 197 F.3d 1245, 1248 (9th Cir. 1999), as amended (Dec. 9, 1999) (citing Oviatt v. Pearce, 954 F.2d 1470, 1474 (9th Cir. 1992)). Causation is "typically discussed in terms of generic and specific causation." In re Hanford Nuclear Reservation Litig., 292 F.3d 1124, 1133 (9th Cir.

2002). "General, or 'generic' causation has been defined by courts to mean whether the substance at issue had the capacity to cause the harm alleged, while 'individual causation' refers to whether a particular individual suffers from a particular ailment as a result of exposure to a substance." Id.; Robertson v. McNeil-PPC, Inc., No. CV-11-09050-JAK (SSx), 2015 WL 12698437, at *4 (C.D. Cal. Dec. 23, 2015).

Courts recognize demonstrating causation is difficult. Avila v. Willits Envtl. Remediation Tr., No. C 99-3941 SI, 2009 WL 1813125, at *24 (N.D. Cal. June 18, 2009), aff'd, 633 F.3d 828 (9th Cir. 2011). "The fact that a determination of causation is difficult to establish cannot, however, provide a plaintiff with an excuse to dispense with the introduction of some reasonably reliable evidence proving this essential element of his case." Id. (granting summary judgment for defendants where plaintiffs' expert's opinion that exposure to hexavalent chromium in groundwater caused plaintiffs' injuries was speculative and unreliable). Causation must be proven by expert testimony where "the etiology of [a] plaintiff's injuries and the alleged mechanisms of causation are beyond the experience of laypeople." Sanderson v. Int'l Flavors & Fragrances, Inc., 950 F. Supp. 981, 1003 (C.D. Cal. 1996) (granting summary judgment for defendants because plaintiff presented no experts that could show medical causation and rejecting plaintiff's proposal to let a jury use its "common sense" to infer causation from a temporal relationship between plaintiff's exposures and symptoms).

**2.    Analysis**

Here, Plaintiff has not provided any evidence establishing (1) general causation – that arsenic and uranium exposure could cause the alleged ailments, or (2) specific causation – that Plaintiff's particular ailments are a result of exposure to arsenic and uranium.

Plaintiff appears to be attempting to rely on his own declarations, the affidavit of Nick Panchev, the declaration of Kimberly Blowney, as well as "facts,"

"expert witness reports," and photograph captions that appear to have been prepared by Plaintiff as evidence of causation.  As discussed above, however, Defendant's evidentiary objections on the grounds of improper lay witness opinion are sustained.  Therefore, Plaintiff cannot rely on his own declarations, the affidavit of Nick Panchev, the declaration of Kimberly Blowney, or the "facts" and photograph captions to create a genuine issue of material fact regarding causation.

The only other exhibit mentioning causation is the "scientific reports by experts" attached as Exhibit 1-E.[6]  Plaintiff appears to argue this document shows "any illness and disease can be caused ('CAUSATION') [by] exposure to Arsenic in drinking water and definitely more severe illnesses and diseases, such as terminal cancer . . ., due to prolonged exposure to either or both, Arsenic and Uranium."  Dkt. 151 at 2.  However, while Plaintiff describes Exhibit 1-E as "expert reports," the reports are not signed by anyone and appear to have been prepared by Plaintiff (based on font and sentence structure anomalies), rather than qualified experts.  Because this Court has no basis to find Plaintiff is qualified to express such opinions and conclusions, the "scientific reports" do not constitute "significant probative evidence" sufficient to create a material issue of fact regarding general causation.  See Bias, 508 F.3d at 1222.

Additionally, Plaintiff has no expert testimony to support causation.  Discovery is closed in this action.  The action has been pending since July 26, 2016 and Plaintiff's initial expert disclosures were not due until October 2, 2017.  Dkts. 1, 78.  Therefore, Plaintiff has had ample opportunity, but he has failed to adequately disclose any anticipated expert witnesses.  While Plaintiff's initial expert disclosure lists a number of persons and governmental agencies, including

---

[6] Plaintiff's medical records do not mention the cause of his ailments.  To the extent Plaintiff is attempting to offer his doctors as experts on the cause of his ailments, Plaintiff has not offered any evidence of the doctors' proposed testimony rendering such testimony impermissibly speculative.  See Avila, 2009 WL 1813125, at *24.

14

the Federal Bureau of Investigation, Karen Glasgow of the United States Department of the Interior, Xavier Becerra, The United States Department of Homeland Security, Blaine Tech Services, Inc., and Erin Brockovich, <u>see</u> Mink Decl., Ex. H, Plaintiff's disclosure does not comply with Federal Rule of Civil Procedure 26(a)(2).[7]  Moreover, Plaintiff has not submitted declarations, or other testimony from any of these individuals in support of his Opposition.  Hence, neither the Court nor Defendant can determine the facts and opinions to which the witnesses are expected to testify.  Additionally, because the failure to properly

---

[7] Federal Rule of Civil Procedure 26(a)(2) provides:
    (A) In General. In addition to the disclosures required by Rule 26(a)(1), a party must disclose to the other parties the identity of any witness it may use at trial to present evidence under Federal Rule of Evidence 702, 703, or 705.
    (B) Witnesses Who Must Provide a Written Report. Unless otherwise stipulated or ordered by the court, this disclosure must be accompanied by a written report--prepared and signed by the witness-- if the witness is one retained or specially employed to provide expert testimony in the case or one whose duties as the party's employee regularly involve giving expert testimony. The report must contain:
        (i) a complete statement of all opinions the witness will express and the basis and reasons for them;
        (ii) the facts or data considered by the witness in forming them;
        (iii) any exhibits that will be used to summarize or support them;
        (iv) the witness's qualifications, including a list of all publications authored in the previous 10 years;
        (v) a list of all other cases in which, during the previous 4 years, the witness testified as an expert at trial or by deposition; and
        (vi) a statement of the compensation to be paid for the study and testimony in the case.
    (C) Witnesses Who Do Not Provide a Written Report. Unless otherwise stipulated or ordered by the court, if the witness is not required to provide a written report, this disclosure must state:
        (i) the subject matter on which the witness is expected to present evidence under Federal Rule of Evidence 702, 703, or 705; and
        (ii) a summary of the facts and opinions to which the witness is expected to testify.
Fed. R. Civ. P. 26(a)(2).

disclose any expert witness was not substantially justified or harmless, Plaintiff would be precluded from using any undisclosed expert testimony to supply evidence in Opposition to Defendant's Motion for Summary Judgment or at trial. Fed. R. Civ. P. 37(c)(1);[8] <u>Yeti by Molly, Ltd. v. Deckers Outdoor Corp.</u>, 259 F.3d 1101, 1107 (9th Cir. 2001) (affirming decision to exclude expert witness where failure to timely and properly disclose witness report was not substantially justified or harmless).  Ultimately, because the "alleged mechanisms of causation are beyond the experience of laypeople," Plaintiff cannot establish causation absent such expert testimony.  <u>Sanderson</u>, 950 F. Supp. at 1003.

      Lastly, Plaintiff appears to believe he can establish causation because he asserts the aquifer was his only source of drinking water.  Assuming the aquifer was Plaintiff's only source of drinking water does not, however, establish a genuine issue of material fact that the arsenic and uranium in the water was the general and specific cause of Plaintiff's asserted injuries.  Among other things, Plaintiff's claim fails to account for any of the numerous other potential causes for his various ailments.  Without the assistance of expert testimony, however, any attempt by the Court or a jury to determine both the general and specific cause of Plaintiff's injuries would be purely speculative.  <u>See</u> <u>Avila</u>, 2009 WL 1813125, at *24.

      Having reviewed all of the Exhibits, Declarations, and Affidavits filed by Plaintiff in support of his Opposition to Defendant's Motion for Summary Judgment, the Court has not identified any other evidence that could be construed as attempting to establish the cause of Plaintiff's injuries.  Hence, Plaintiff has failed to provide "significant probative evidence" sufficient to create a material issue of fact regarding causation.  <u>See</u> <u>Bias</u>, 508 F.3d at 1222.

---

[8] Federal Rule of Civil Procedure 37(c)(1) provides: "If a party fails to provide information or identify a witness as required by Rule 26(a) or (e), the party is not allowed to use that information or witness to supply evidence on a motion, at a hearing, or at a trial, unless the failure was substantially justified or is harmless."

Accordingly, because Plaintiff has failed to provide any evidence of causation, an essential element of his claim, Defendant is entitled to summary judgment in its favor.

## IV.
## **CONCLUSION**

IT IS THEREFORE RECOMMENDED the Court issue an Order (1) accepting this Report and Recommendation; (2) GRANTING Defendant's Motion for Summary Judgment; and (3) DISMISSING this action with prejudice.

Dated: June 25, 2018

HONORABLE KENLY KIYA KATO
United States Magistrate Judge

17